# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

TOMMY LINGEFELT, SR.                          CIVIL ACTION NO. 08-0732
    La. DOC # 83699
VS.                                          SECTION P
                                             JUDGE JAMES

TIM WILKINSON, WARDEN                         MAGISTRATE JUDGE HAYES

## SUPPLEMENTAL REPORT AND RECOMMENDATION

On May 21, 2008, *pro se* petitioner Tommy Lingefelt, Sr., filed the instant petition for

writ of *habeas corpus* pursuant to 28 U.S.C. §2254. [rec. doc. 1]  On July 14, 2008, the

undersigned recommended dismissal of the petition as time-barred by the provisions of 28 U.S.C.

§2244(d)(1). [rec. doc. 2] On July 22, 2008, petitioner objected claiming that he was entitled to

the benefits of equitable tolling because his retained post-conviction counsel actively misled him.

[rec. doc. 3] On August 28, 2008, and September 3, 2008, the Court directed the petitioner to

provide additional evidence in support of his equitable tolling claim [rec. docs. 4 and 5]. On

October 9 and 16, 2008, petitioner provided additional documentary evidence and argument in

support of his claim that he is entitled to equitable tolling. [rec. docs. 6 and 7]

The original and amended petitions and exhibits establish the following relevant facts and

chronology of events:

## *1. Trial Court*

On March 20, 2002, petitioner made his initial appearance in court. Since he claimed to

be indigent, counsel was appointed to represent him. [rec. doc. 6-3, Exhibit 1, court minutes,  p.

2] His jury trial commenced on January 14, 2003; on January 16, 2003, the jury found him guilty

as charged of production/manufacture of methamphetamine and conspiracy to produce/manufacture methamphetamine. Petitioner was also charged with possession with intent to distribute marijuana; however, the jury returned a responsive verdict of guilty of possession of marijuana as to that count. [rec. doc. 6-3, Exhibit 1, court minutes, pp. 4-5] On April 9, 2003, petitioner was sentenced to serve consecutive sentences of 22 and 10 years on the methamphetamine charges. A 6-month sentence was imposed on the possession of marijuana charge and that sentence was ordered to run concurrent with the previous sentences. [rec. doc. 6-3, Exhibit 1, pp. 5-6] A motion to reconsider sentence was timely filed and on May 21, 2003, a hearing was convened on that motion. The motion to reconsider was denied and a motion for appeal was made on petitioner's behalf. [rec. doc. 6-3, Exhibit 1, p. 6 and Exhibit 2, p.7; see also transcript, doc. 6-3, Exhibit 2, pp. 8-17]

## 2. Direct Appeal

Court-appointed appellate counsel appealed petitioner's conviction and sentence to the Second Circuit Court of Appeals arguing two assignments of error:

(1) The trial court erred in denying the defendant's objection to the state's proposed jury instructions on the definition of preparation and manufacture.

(2) The trial court erred in denying defendant's motion to reconsider a constitutionally excessive sentence. [rec. doc. 6-5, Exhibit 4, pp. 1-13][1]

On January 28, 2004, the court of appeals affirmed petitioner's convictions and sentences and

---

[1] Petitioner also submitted a *pro se* assignment of error claiming an illegal search without probable cause. The Court of Appeals addressed that claim in a footnote and rejected it as procedurally barred and without merit noting, "This claim is waived when it is not raised prior to trial. La. C.Cr.P. art. 703. However, we note that the searches were conducted pursuant to warrants and there was testimony that prior to the warrants being issued, the police were given information that the drug-related offenses occurred on the defendant's property." *State v. Lingefelt*, 38,038 (La.App. 2 Cir. 1/28/04), at **7; 865 So.2d at 284, fn.1.

mailed Notice of Judgment to petitioner and his attorney. [See *State of Louisiana v. Tommy L. Lingefelt, Sr.*, 38,038-KA (La. App. 2 Cir. 1/28/2004), 865 So.2d 280; see also rec. doc. 6-5, Exhibit 5, p. 14 "Notice of Judgment;" and pp. 15-22 Slip Opinion.]

On January 30, 2004, petitioner's appellate counsel advised petitioner of the results of the appeal. Petitioner was further advised that he could file an application for writs to the Louisiana Supreme Court but that he must file the application within thirty days of the date of the decision. Counsel also advised petitioner that La. C.Cr.P. art. 930.8 provides a two year limitation period for the filing of applications for post-conviction relief and that "Federal law mandates that any habeas corpus proceeding ... be filed within one (1) year of the final decision on appeal, excluding the time any State post conviction relief application is pending..." Petitioner received this letter on February 3, 2004. [rec. doc. 6-6, Exhibit 6]

On February 11, 2004, petitioner signed a *pro se* application for a writ of *certiorari* in the Louisiana Supreme Court. Petitioner argued four claims: (1) a search and seizure claim; (2) contradicting and conflicting testimony by Detective Fleming; (3) erroneous jury instructions; and (4) excessive sentence. [rec. doc. 6-7, Exhibit 7, pp. 2-15]

On September 24, 2004, his application for writs was denied. *State of Louisiana v. Tommy L. Lingefelt, Sr.*, 2004-0597 (La. 9/24/2004), 882 So.2d 1165. [see also rec. doc. 6-7, Exhibit 7, p. 1]

Petitioner did not seek further direct review in the United States Supreme Court. [rec. doc. 1, ¶6(d)].

*3. First Habeas Corpus*

On June 10, 2005, petitioner filed a *pro se* petition for writ of *habeas corpus* (28 U.S.C.

§2254) in this court. Petitioner argued no specific claims for relief but instead asked the court to stay the proceedings to enable him to toll the federal limitations period while he sought post-conviction relief in the Louisiana courts. [*Tommy L. Lingefelt, Sr. v. Tim Wilkinson, Warden*, No. 3:05-cv-1054 at rec. doc. 1] On July 11, 2005, petitioner was ordered to amend his pleadings and to submit his petition on the appropriate form. [*Id*., rec. doc. 2] On August 1, 2005, petitioner filed a "Motion to Withdraw Filing of Premature Habeas Corpus 28 U.S.C. §2254" in which he acknowledged that he had not yet exhausted available state court remedies. He requested permission to withdraw his pleading, or, in the alternative, stay and abeyance of the pending action. [*Id*., rec. doc. 3] On the same day, United States Magistrate Judge and Clerk of Court Robert H. Shemwell granted petitioner's motion; the petition was dismissed without prejudice. [*Id*., rec. doc. 4] On September 2, 2005, petitioner submitted a "Motion to Stay Tolling Period." Petitioner argued that as a result of Hurricane Katrina, additional prisoners were being housed at Winn Corrections Center. He argued that the added population made access to the law library impossible. He noted that he had only 8 days remaining within which to timely submit an application for post-conviction relief to the Louisiana courts. [*Id*., rec. doc. 5] On September 9, 2005, the undersigned denied the motion noting that Louisiana Governor Kathleen Blanco had already issued an order suspending state prescriptive periods. The undersigned further noted that petitioner's motion was premature with respect to any federal *habeas corpus* claims.[2] [*Id*.,

---

[2] As will be discussed more fully hereinafter, 28 U.S.C. §2244(d) provides a 1-year period of limitations for state prisoners filing petitions for *habeas corpus*. This period is generally reckoned from the "... date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review..." §2244(d)(1)(A). Ordinarily, a Louisiana prisoner's conviction becomes final for purposes of §2244 ninety days after the judgment of the Louisiana Supreme Court denying writs on direct review is entered, when the time to file a petition for writ of *certiorari* with the United States Supreme Court has expired. See U.S. Sup.Ct. R. 10(b), 6 & 13 (requiring filing within 90 days of a state court of last resort entering judgement, with review of the decision by a state court of last resort); see also *Flanagan v. Johnson*, 154 F.3d 196 (5th Cir.1998). Thus, petitioner's judgment

electronic order following rec. doc. 6]

### 4. Post-Conviction Relief

On September 26, 2005, petitioner filed a *pro se* Application for Post-Conviction Relief in the Fifth Judicial District Court. [rec. doc. 1, ¶7(b); rec. doc. 6-7, Exhibit 8, pp. 16-39] Petitioner argued the following claims for relief: (1) ineffective assistance of counsel (failure of counsel to challenge juror Ladonna Englerth on *voir dire*; failure to object to the admission of State's photographic Exhibits 7 and 8; failure to pursue on cross examination inconsistent statements made by the state's witnesses); (2) petitioner was prejudiced when he was not provided a complete and verbatim copy of the trial record (petitioner claimed that his argument with his attorney over the *voir dire* process involving juror Englerth was not transcribed); (3) ineffective assistance of appellate counsel (counsel failed to pursue the juror issue on appeal); and, (4) insufficiency of the evidence. [rec. doc. 6-7, Exhibit 8, pp. 16-39]

On August 25, 2006, an evidentiary hearing was convened [rec. doc. 6-8, Exhibit 9], and counsel was appointed to represent the petitioner. [rec. doc. 6-9 at p. 10] According to the transcript, the trial judge had previously summarily disposed of all claims except the issues involving Ladonna Englerth in a judgment rendered on October 31, 2005. [rec. doc. 6-8, Exhibit 9, p. 3] Therefore the hearing was confined to the issues concerning Ms. Englerth. The parties agreed to a second hearing to obtain the testimony of a witness named Ricky Yates. That second hearing was convened on November 2, 2006. For reasons not sufficiently explained, prison

---

became final for AEDPA purposes 90 days following the Louisiana Supreme Court's September 24, 2004 writ denial, or on or about December 24, 2004. While approximately 9-months of the 1-year limitation period had expired by the time petitioner filed his motion, it was abundantly clear that the AEDPA limitations period was in no danger of expiring provided petitioner judiciously managed the remaining time.

authorities neglected to produce petitioner at the hearing; nevertheless, his court-appointed counsel waived his presence and proceeded with the hearing. [rec. doc. 6-8, Exhibit 9, pp. 67-74] At the conclusion of the hearing, the judge denied relief stating,

> The Court has considered the testimony. I went ahead and reread the testimony from the earlier proceeding. I've now listened to the testimony from this witness. The Court has considered the fact that the vote was ten to two and the juror in question was in the minority. In fact, she had decided that the defendant, the petitioner in this case should be convicted of a reduced charge and the majority, that is ten of the jurors, decided that this particular petitioner should be convicted of the more serious charge. So, I find that the inclusion of this particular juror on this jury did not prejudice the rights of the defendant in anyway. It probably helped him. I also find that the defendant has failed in his burden of proof. He has not shown me that any of his constitutional rights have been violated. He's also not shown me that the inclusion of this particular juror on this jury, had any effect whatsoever negatively on him as far as the verdict against him is concerned.[3] So the petition for post conviction relief – or the application for post conviction relief will be dismissed. [rec. doc. 6-8, pp. 72-73]

On December 7, 2006, petitioner filed a *pro se* motion for a copy of the transcript of the November 2, 2006, evidentiary hearing. His motion was granted on December 12, 2006, and the court ordered production of the transcript on or before December 12, 2006. [rec. doc. 6-8, pp. 75-77]

On January 26, 2007, petitioner filed a *pro se* application for supervisory writs in the Second Circuit Court of Appeal. [rec. doc. 6-9, Exhibit 11, pp. 1-35] Petitioner argued the following claims for relief: (1) sufficiency of the evidence; (2) ineffective assistance of trial counsel; (3) failure to provide verbatim copy of certain portions of the trial proceedings;

---

[3] In fact, Ms. Englerth testified that she did not know the petitioner; that her answers on voir dire were truthful; that she did not remember any argument between petitioner his attorney or the court during voir dire, and, that she in fact was one of two jurors who disagreed with the majority who voted to convict petitioner. [rec. doc. 6-8, pp. 13-24]

(4) ineffective assistance of appellate counsel; and, (5) petitioner was denied the opportunity to fully develop the factual basis of his claims at the post-conviction evidentiary hearing. [rec. doc. 6-9, p. 11]

On March 1, 2007, the Second Circuit Court of Appeals denied writs noting:

The trial court's denial of relief pursuant to the summary disposition provisions of La. C.Cr.P. art. 929 was correct. The applicant's claim of insufficiency of evidence to convict was properly denied by the trial court after adverting to the facts adduced at trial and referenced in this court's opinion on appeal.
The trial court, for the reasons given in the sufficiency analysis, found that the items located on the property would have been admissible, and the photographs of the items were likewise admissible; as a result, the trial court held that no ineffective assistance had occurred as a result of defense counsel not objecting to the introduction of the photographs.

The trial court found no showing of ineffective assistance in failing to pursue conflicting or contradictory statements by state witnesses. The trial court noted that it had reviewed the disputed statements and found no basis for any objections; it further found that counsel 'diligently objected when appropriate' and conducted 'thorough and effective cross-examination' of the state's witnesses and denied this claim.

In an evidentiary hearing in which the applicant was represented by counsel, the applicant failed to show any error by his trial counsel in keeping a juror, who the applicant claimed knew him from decades before, but who testified during voir dire and during the hearing that she did not know the applicant. The evidence showed, and the applicant admitted, that, contrary to the applicant's claims of an open objection in the courtroom to the acceptance of the juror and an admonition by the court to desist in making a commotion, that no such events occurred. There was no evidentiary support for the applicant's claims that he objected to the juror from his attorney, from the assistant district attorney prosecuting, from the court reporter, or from the jury venire person being examined. The trial court found that no prejudice arose from the acceptance of the juror, who voted for a lesser included offense instead of the offense of conviction. There was also no evidence that the transcript of the trial was incomplete. The applicant admitted that the events he claimed occurred in the courtroom did not occur and were thus not left out of the transcript.

*State of Louisiana v. Tommy Lee Lingefelt, Sr.*, No. 42288-KH (La. App. 2 Cir. 3/1/2007) [ rec.

doc. 6-9, pp. 36-37] Petitioner elsewhere claimed to have received notice of judgment on March 5, 2007. [rec. doc. 6-10, p. 18]

On April 2, 2007, petitioner signed a *pro se* application for writs directed to the Louisiana Supreme Court. [rec. doc. 6-10, Exhibit 13, pp. 1-31] Therein he argued a single Assignment of Error – "The Fifth Judicial District Court and the Second Circuit Court of Appeal erred in upholding the unconstitutional evidentiary hearing and dismissing the applicant's post-conviction application." [rec. doc. 6-10, p. 11] More specifically, he argued ineffective assistance of post-conviction counsel [rec. doc. 6-10, p. 20] and, argued trial court error in allowing the November evidentiary hearing to proceed in petitioner's absence and in the absence of all of his witnesses. [rec. doc. 6-10, p. 24]. As to the actual post-conviction claims, petitioner presented **ONLY** the following argument to the Supreme Court, "As to the claims that were summarily dismissed prior to the evidentiary hearing, rather than attempt to perfect them, and for the benefit of preventing unnecessary lengthy argument, the applicant wishes to confine his argument to that which is presented in his memorandum of law and facts in support of application for post-conviction relief, and that which was presented in the supporting brief on application for writs filed into the Second Circuit." [rec. doc. 6-10, pp. 27-28]

On April 12, 2007, petitioner entered into an employment contract with the Clary Law Firm, Inc., a division of Clary & Overton, L.L.P. and retained counsel for "Post-Conviction Relief; Appeals – All in State system..." The terms of the contract further specified that counsel was to address the following "tasks" – (1) Investigate and file any post-trial motions; (2) Thoroughly review trial court record and transcript; (3) Thoroughly review court records from 2nd Circuit and LA Supreme Court; (4) Investigate and file any and all appeals which might be

applicable; (5) Enroll and prosecute on [petitioner's] behalf any motions or appeals or writs currently pending; (6) Pursue a re-sentencing on the charges; (7) <u>The work we are contracting to perform in this agreement does NOT include (a) any action in the Federal Courts; (b) Payment for any retrial in either state or federal court</u>." [rec. doc. 6-10, pp. 53-54 (emphasis supplied)]

Sometime prior to May 15, 2007, Attorney James R. Clary, Jr. filed a motion to enroll as counsel in the Louisiana Supreme Court. On May 15, 2007, his motion was granted and he was given a period of 20 days within which to file a supplemental writ application. [rec. doc. 6-10, p. 49] On June 4, 2007, counsel filed a supplemental writ application in which he argued only two additional assignments of error:

> (1) The district court erred in both conducting and making a ruling at the Post-Conviction Relief proceedings, without the presence of the defendant. No waivers were executed by the defendant; and,

> (2) The trial court erred in denying defendant's motion to reconsider a constitutionally excessive sentence. [rec. doc. 6-10, p. 35]

Counsel thereafter expanded the argument with respect to Assignment of Error No. 1 to include, "... the Trial Court did not allow the defendant to present his witnesses at the post-conviction hearing held in Open Court on November 2, 2006." [rec. doc. 6-10, p. 37] Counsel argued that the actions of the trial court violated provisions of the Louisiana Constitution, Art. 1, Section 16 (the right to confront and cross-examine witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf) [see rec. doc. 6-10, p. 38] and Louisiana Constitution, Art. 1, Section 20 (excessiveness of sentence) [see rec. doc. 6-10, p. 40]. Counsel briefly alluded to the United States Constitution, with regard to Assignment of Error Number 1 by stating,

> In addition, Lingefelt's Sixth Amendment rights under the United States
> Constitution have been violated... Our United States Constitution thus guarantees
> an accused the right to present any witnesses who may have evidence favorable to
> him and to compel their attendance before the tribunal. These rights were not
> accorded to the accused in this case. .. Given this, the constitutional protections
> due Mr. Lingefelt under both Article I, Section 16 of the Louisiana Constitution
> and the United States Constitution, Amendment VI were inexplicably denied him.
> [rec. doc. 6-10, p. 40]

On January 11, 2008, his application for writs was denied. *State of Louisiana ex rel. Tommy Lee Lingefelt, Sr. vs. State of Louisiana*, 2007-0804 (La. 1/11/2008), 972 So.2d 1158. [see also rec. doc. 6-10, p. 48]

### 5. Correspondence Between Petitioner and Counsel

According to correspondence to petitioner from his attorney dated March 6, 2008, petitioner and counsel met in person on January 31, 2008 to discuss options following the Supreme Court's writ denial. In the March 6, 2008 letter, counsel advised petitioner of the following options: (1) motion for a new trial (La. C.Cr.P. art. 851 and 853); (2) application for *certiorari* in the United States Supreme Court; (3) petition for *habeas corpus* in the federal court; or (4) meet with the District Attorney and Judge to explore a reduction in sentence. Counsel then advised petitioner that Option 1 (new trial) was no longer viable since the time for seeking a new trial had passed. He noted that Option 2 (*certiorari* in the United States Supreme Court) remained viable; however, he suggested that "... the issue has to be constitutional in character or the court's ruling must reflect a gross departure from the rule of law ...";  and counsel was pessimistic as to the chances for success. Counsel noted that Option 3 (*habeas corpus* under §2254) remained a viable option since "[t]he time limit for filing such a petition is 1 year from the date of judgment of the State Court of last resort." Counsel, however, opined that since "...

your witnesses were brought to court and there was a representative working on your behalf present in the courtroom... your chances here are going to be a 'long shot'..." Counsel concluded with an endorsement of Option 4 and noted, "... the retention agreement you effected with me did not contemplate our initiating federal causes of action and it certainly did not envision taking this matter to the U.S. Supreme Court. Accordingly, we must understand that my involvement must be consistent with our agreement, Tommy. Thus, I recommend that we attempt to pursue the re-sentencing option, perhaps in concert with the filing of a Habeas Corpus action in Federal Court. My strong foreboding feeling is that this federal action will be doomed to failure but it will give us the entre necessary to commence a re-sentencing discussion with the D.A. and the presiding judge in State Court. I would be willing to extend my professional involvement in this manner. I will need your written permission to proceed in this way. So, send your thought promptly." [rec. doc. 6-10, pp. 55-71]

The evidence suggests that petitioner did not respond to this inquiry until May 6, 2008; on that date petitioner sent another letter to his attorney and stated,

> I'm writing in regard to the time limit that I have to file into the Federal Court. I don't want to miss this option. In your letter it was stated that I had one year from the ruling date of the State Supreme. I know you said you were going to try to set up a meeting with the judge and D.A. I don't feel that hindrance would be done if I moved forward with filing to the Federal Court. Please send me a copy of what I filed to the State Supreme and the brief you filed. I was told the clock was ticking on the Federal time bar while I was preparing motions for the lower courts. If so my time limit may be past due now. Some people I know have been able to file late because of misunderstandings. I can't afford to lose this option ... [rec. doc. 6-10, p. 59 (emphasis supplied)]

Petitioner also requested a copy of the employment contract and an itemized statement of the expenditures from the trust account. [rec. doc. 6-10, p. 59]

On May 16, 2008, counsel responded in person to petitioner's May 6, 2008 request; he provided a copy of the original employment contract and an accounting. In addition, counsel memorialized their conversation as follows:

> As you know, our original Contract of Employment did not contemplate providing legal assistance in our federal cause of action. Now that your state actions are exhausted, the federal avenue is the only option remaining open. We have prepared federal pleadings for you – said pleadings to be filed initially in proper person for all the reasons explained to you in detail. In due course, however, we will enroll as counsel on your behalf in the federal habeas corpus action, thereby necessitating an additional fee, which will be $5,000.00. By signing this letter, you are authorizing me to transfer this $5,000.00 fee out of Trust and into my Operations Account. The payment of this additional fee will retain my firm to undertake your representation throughout all proceedings in the Federal District Court. [rec. doc. 6-10, pp. 50-54(emphasis supplied)]

Petitioner then signed and dated the letter May 16, 2008. [rec. doc. 6-10, pp. 50-54]

### 6. Habeas Corpus

Petitioner signed his federal *habeas corpus* petition on May 16, 2008 [rec. doc. 1, p. 8; rec doc. 1-3, pp. 12-13][4]; it was mailed from Baton Rouge, Louisiana on May 19, 2008 [rec. doc. 1, p. 9] and received and filed on May 21, 2008. Since it appears that the pleading was mailed by counsel, and not delivered to prison authorities for mailing, petitioner is not entitled to the benefits of the "mailbox rule"[5] and his pleading must be considered filed the date it was received

---

[4] As noted above, counsel and petitioner met in person on May 16. Petitioner signed the letter extending the contract and was apparently provided the *habeas* petition prepared on his behalf by counsel. [see doc. 6-10, p. 60, letter of May 27, 2008 from counsel to petitioner which stated in part, "By the time you receive this letter your federal habeas corpus action will have been filed and will be well underway. As we explained in our meeting with you on Friday, May 16, 2008, we will be enrolling in that action at the appropriate time and before any hearings take place."]

[5] Under the "prison mailbox rule," a *pro se* prisoner's federal *habeas corpus* petition is deemed filed when the prisoner delivers it to prison officials according to the proper prison procedures. See *Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir.1999).

by the Clerk of Court, May 21, 2008. Petitioner raised three grounds for relief: (1) The trial court erred in not hearing testimony or affidavits from witnesses of the defendant whose names were ordered to be produced by the District Court Judge to the attorney representing the defendant; (2) The trial court erred in both conducting and making a ruling at the Post-Conviction Relief proceedings, without the presence of the defendant. No waivers were executed by the defendant; and (3) The trial court erred in denying defendant's motion to reconsider a constitutionally excessive sentence." [rec. doc. 1-3, p. 3][6]

On July 14, 2008, the undersigned completed an initial review of the pleadings and exhibits and concluded that the instant habeas petition was time-barred by the provisions of 28 U.S.C. §2244(d)(1).[7]

---

[6] Again, other than fleeting references to the Sixth and Eighth Amendments, the instant petition merely reiterated counsel's arguments before the Louisiana Supreme Court which centered on violations of Article 1, Sections 16 and 20 of the Louisiana Constitution.

[7] The undersigned made the following observations and calculations: "Petitioner appealed his conviction and sentence to the Second Circuit Court of Appeals. When that court affirmed his conviction and sentence, he applied for writs to the Louisiana Supreme Court. That court denied writs on September 24, 2004 [*State of Louisiana v. Tommy L. Lingefelt, Sr.*, 2004-0597 (La. 9/24/2004), 882 So.2d 1165], and, petitioner did not seek further direct review in the United States Supreme Court. [rec. doc. 1, ¶6(d)].

Therefore, petitioner's judgment of conviction and sentence "became final by ... the expiration of the time for seeking [direct] review" [28 U.S.C. § 2244(d)(1)(A)], ninety days following the Louisiana Supreme Court's writ denial, or on or about December 24, 2004. See *Flanagan v. Johnson*, 154 F.3d 196 (5th Cir.1998)."

The undersigned then noted that petitioner could not rely on the tolling provisions of 28 U.S.C. §2244(d)(2) with respect to his first federal habeas filing "... because his pleading was not a '... properly filed application for State post-conviction or other collateral review...' See *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)."

However, the undersigned did apply the tolling provisions of §2244(d)(2) for the time during which his state application for post-conviction relief remained pending in the Louisiana courts – from September 26, 2005 (the date he filed his pro se application for post-conviction relief in the Fifth Judicial District Court) until January 11, 2008 when the Louisiana Supreme Court denied writs. *State of Louisiana ex rel. Tommy Lee Lingefelt, Sr. vs. State of Louisiana*, 2007-0804 (La. 1/11/2008), 972 So.2d 1158. However, the undersigned calculated that a period of 275 un-tolled days elapsed between the date petitioner's judgment of conviction became final (December 24, 2004) and the date he filed his state application for post-conviction relief (September 26, 2005).

On July 22, 2008, petitioner objected to the Report and Recommendation and presented the issue for review as follows: "Whether an attorney's failure to timely file a petition for writ of *habeas corpus*, although styled as *pro se*, qualifies as rare and exceptional circumstances as to permit equitable tolling." [rec. doc. 3, p. 2] In support of his claim, petitioner alleged that he had hired counsel while his post-conviction writ application was pending in the Louisiana Supreme Court. He then claimed that following the Supreme Court's January 11, 2008, writ denial, "... petitioner immediately advised his attorney that he wished to seek a review of the federal courts via a petition for writ of habeas corpus. His attorney assured him that this action would take place." [rec. doc. 3, p. 3] Petitioner then argued that he "... was actively misled by his attorney as to when his federal habeas petition was filed which amounts to extraordinary prevention of his ability to assert his rights." [rec. doc. 3, p. 4] Petitioner also argued, "During the time that his direct appeal was denied by the La. Supreme Court and the date the petitioner initiated the filing of his state post-conviction, a period of nine (9) months had transpired. This left the petitioner with approximately three (3) months to file a federal habeas petition. However it is noted that the petitioner hired his attorney on April 7, 2007 which provided the attorney with additional time to prepare a federal habeas corpus petition in anticipation of the state court's eventual denial of relief on 11 January 2008. Therefore, the petitioner's pro se filings in the state courts were diligent, and the fact that he hired an attorney to file a federal habeas petition well within the time limits reflects that the petitioner made a diligent attempt to seek federal review." [rec. doc. 3, pp.

Having determined that 275 days of the 365 day limitations period had elapsed between finality of judgment and the commencement of statutory tolling, the undersigned calculated that a period of 125 un-tolled days elapsed following the cessation of tolling (January 11, 2008) until the date petitioner filed his federal *habeas corpus* petition on May 16, 2008. [See rec. doc. 2, Report and Recommendation]

5-6] In support of these claims made in his objection, petitioner provided: (1) his "Declaration" that (a) on April 7, 2007, he hired Mr. Clary "... to pursue any and all available relief in regards to my state convictions, which specifically included the filing of a federal petition for writ of habeas corpus..."; (b) that "The time limitations would not allow me to file directly into the United States Supreme Court after being denied in the final state court; therefore a federal petition for writ of habeas corpus was the only remaining option..."; and, (c) that "On a date not readily available to me at this time, my attorney, Mr. Clary, appeared at my place of incarceration and asked me to sign what appeared to be a federal petition for writ of habeas corpus, to which I complied. At this time, based on the specific and documented advice of Mr. Clary, I had a justifiable belief that I was filing a timely federal petition for writ of habeas corpus."  [rec. doc. 3, pp. 10-11]; and, (2) a copy of the March 6, 2008 letter from counsel to petitioner which outlined four options available to petitioner [rec. doc. 3, pp. 14-17].

Based upon the assertions in petitioner's objection, the Court noted that petitioner "... claims that he is entitled to equitable tolling of the statute of limitations because he was actively misled by his attorney as to when his petition was filed."  Accordingly, the matter was remanded with specific instructions for the undersigned to prepare a supplemental report and recommendation addressing the issue of equitable tolling. [rec. doc. 4] Petitioner was then directed to provide additional information, including "Copies of all employment or retainer contracts entered into between Petitioner and his attorney ... and copies of all correspondence between Petitioner and his attorney evidencing an attorney-client relationship as described by Petitioner." [rec. doc. 5]

On October 9, 2008, petitioner responded to these orders and provided the documents

which have been referred to above.

In addition, he claimed entitlement to equitable tolling on the following grounds:

1. Petitioner claims that he is entitled to tolling for the 29 day period between August 29, 2005, the date Hurricane Katrina struck Louisiana and September 26, 2005, the date petitioner filed his state application for post-conviction relief because during this time, prisoners from Jefferson and Orleans Parish were housed at Winn Corrections Center and this circumstance "prohibited access to the prison law library..." [rec. doc. 6, pp. 8-9]

2. Petitioner claims that he is entitled to a tolling for the 2 month period between November 2006 (the date the District Court denied his application for post-conviction relief) and January 2007 when he obtained the November transcripts and discovered that his claims were denied. [rec. doc. 6, pp. 10-11]

3. Petitioner claims that his retained post-conviction counsel, Mr. Clary "repeatedly advised [petitioner] that he had one year from the Louisiana Supreme Court's denial of post-conviction to file his *habeas* petition in federal court." [rec. doc. 6, pp. 12-16]

Finally, petitioner alleged that the apparent *pro se* pleading entitled "Amendment to the Application for Writ of Habeas Corpus" [rec. doc. 6-10, pp. 63-71] was actually prepared by Mr. Clary and signed by petitioner. Petitioner further advised that the "...pleading is presented as a supporting exhibit and should not be ruled on." [rec. doc. 6, p. 17]

***Law and Analysis***

**1. Equitable Tolling – Misled by Counsel**

There is no doubt but that the instant petition was filed more than 1-year after petitioner's judgment of conviction and sentence became final under the AEDPA. As noted in the original

Report and Recommendation, that one-year statute of limitations can, in rare and exceptional circumstances, be equitably tolled. See *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999) (quotation marks omitted). The petitioner was not actively misled by the state of Louisiana; however, he claims that he was "actively misled" by his attorney.

An attorney's deception, in convincing a prisoner that he has timely filed a *habeas* petition on his behalf presents such a rare and extraordinary circumstance beyond the prisoner's control, that may warrant the application of equitable tolling. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002).[8]  However, contrary to petitioner's assertions, the record he has

---

[8] Petitioner's case is easily distinguished from the *Wynn* case. Wynn was convicted in federal court in 1997; his conviction became final under parallel provisions of the AEDPA on April 26, 1999. Under the AEDPA, he  had one year from that date or until April 26, 2000 to file his collateral attack in the form of a Motion to Vacate pursuant to §2255.  On January 6, 1999, petitioner was assured by his appellate attorney that he would file a habeas corpus petition pursuant to § 2255 on petitioner's behalf.  In  May 1999, petitioner was informed by his appellate attorney that he had filed the § 2255 motion and that a copy of the motion would be forwarded to petitioner. On June 8, 1999, petitioner corresponded to the clerk of court inquiring into the status of his habeas action, and he requested copies of any and all motions filed on his behalf.  On October 13, 1999, he corresponded with the court inquiring into the status of his habeas petition and explaining that he had not heard from his appellate counsel in several months. A law clerk responded by letter dated October 21, 1999, informing petitioner that the record did not reflect any filings on petitioner's behalf. On October 23, 1999, petitioner attempted to contact his appellate attorney but he was unsuccessful. On October 24, 1999, petitioner's father contacted the attorney and informed him that according to the court, no pleadings had been filed on petitioner's behalf. The attorney responded by stating that the reason the court clerk did not find anything in the record was because he, [petitioner's attorney], had filed the petition directly with the judge and was awaiting a response from the Judge; he advised petitioner to be patient. In August 2000, after several unsuccessful attempts to contact his attorney, petitioner obtained a copy of the docket sheet, which revealed that nothing had been filed on his behalf. In September, 2000, petitioner wrote a letter to the court explaining the above-chronicled events and seeking legal advice concerning his situation. By order signed October 16, 2001, the court made petitioner's letter of September 24, 2000, a part of the record and informed petitioner that the court was not in the position to give him legal advice. The court further informed petitioner that the timeliness of a § 2255 motion would only be considered if, and when, petitioner filed such a motion. Petitioner filed his pro se motion 78 days later.

17

submitted does not support his claim of attorney deception.

Petitioner entered into the employment contract with counsel on April 12, 2007, while his *pro se* writ application was still pending in the Louisiana Supreme Court. Contrary to his assertions now, the contract specified that counsel would represent petitioner ONLY in matters involving "Post-Conviction Relief; Appeals – All in State system..." The terms of the contract further specified that "The work we are contracting to perform in this agreement does NOT include (a) any action in the Federal Courts...." [rec. doc. 6-10, pp. 53-54 (emphasis supplied)]

The Supreme Court rejected petitioner's writ applications on January 11, 2008, and petitioner and his attorney had a meeting on January 21. At that meeting counsel and petitioner discussed various options, including filing a petition for *habeas corpus* pursuant to §2254. Counsel then memorialized the conversation in a letter dated March 6, 2008, in which counsel expressed his opinion that petitioner's 1-year period of limitation began "... on the date of judgment of the State Court of last resort." He also reminded petitioner "... the retention agreement you effected with me did not contemplate our initiating federal causes of action and it certainly did not envision taking this matter to the U.S. Supreme Court. Accordingly, we must understand that my involvement must be consistent with our agreement, Tommy. Thus, I recommend that we attempt to pursue the re-sentencing option, perhaps in concert with the filing of a Habeas Corpus action in Federal Court. My strong foreboding feeling is that this federal action will be doomed to failure but it will give us the entree necessary to commence a re-sentencing discussion with the D.A. and the presiding judge in State Court. I would be willing to extend my professional involvement in this manner. I will need your written permission to proceed in this way. So, send your thoughts promptly." [rec. doc. 6-10, pp. 55-71]

Petitioner then waited 2 months before responding to his attorney. In his letter of May 6 he acknowledged that he believed his federal time limits had already expired and he called into question counsel's previous statement that limitations began on the date of the Supreme Court's ruling. [rec. doc. 6-10, p. 59]

Petitioner and counsel did not thereafter consummate the agreement to seek federal *habeas* relief until May 16, 2008 [rec. doc. 10, pp. 50-54], and on that date petitioner signed the *habeas* petition prepared on his behalf by counsel. It was filed shortly thereafter.

The evidence does not suggest, much less establish, that counsel at any time deliberately deceived petitioner. At no time – beginning with the petitioner's meeting in January 2008 to the present – did counsel claim that a federal *habeas* petition had been filed on petitioner's behalf.

At worst, it appears that counsel was mistaken in his calculation of the application of AEDPA's limitation period, and that mistake is insufficient to warrant the application of equitable tolling since "... mere attorney error or neglect is not an circumstance such that equitable tolling is justified." *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir.2002)[9]. Attorney

---

[9] Under the AEDPA, Cousin had until April 9, 1999 to file a habeas petition pursuant to §2254. In January 1999 he submitted his petition to the Clerk of Court along with an *in forma pauperis* application. The motion was denied and notice of the denial was sent to Cousin's attorney on January 22, 1999. Nevertheless the filing fee was not paid until almost 2 years later on January 10, 2001 and that date was the date the pleading was considered filed in federal court. Since the pleading was thus filed after the expiration of the AEDPA limitations period, the petition was dismissed by the district court as time-barred. On appeal, the Fifth Circuit rejected equitable tolling noting, "This court has held that such extraordinary circumstances exist where a petitioner is misled by an affirmative, but incorrect, representation of a district court on which he relies to his detriment. *United States v. Patterson*, 211 F.3d 927, 931-32 (5th Cir.2000). Even if there were a failure of notice in this case, there were no affirmative statements, comparable to those in *Patterson*, on which Cousin could have relied. He was not deceived by the district court, nor did any party obstruct his attempts to obtain *habeas* relief. Instead, he was harmed by the failure, for almost two years, of his own attorney adequately to investigate the status of his petition.

Many courts have considered the question whether attorney error constitutes "rare and exceptional circumstances" and have held that it does not. [footnote – See *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000) (holding that the death of the attorney's father two weeks before filing deadline did not constitute extraordinary circumstance for equitable tolling purposes); *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir.2000) (holding that attorney's confusion over applicability of § 2244(d)(1) did not justify equitable tolling), *cert. denied*, 534 U.S. 863,

error or neglect does not trigger equitable tolling because prisoners are not constitutionally entitled to counsel during post-conviction *habeas* proceedings. *Cousin*, 310 F.3d at 848-49 citing *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In short, the evidence clearly establishes that at no time did counsel assert that pleadings were filed on petitioner's behalf; rather, counsel apparently miscalculated the limitations period. And, "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel." *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007).

Thus, based upon the evidence submitted by the petitioner, the undersigned concludes that he is not entitled to equitable tolling based upon his allegation that he was actively misled by counsel.

## 2. Other Grounds for Tolling

### a. Hurricane Katrina

Petitioner claims that he is entitled to tolling for the 29 day period between August 29, 2005, the date Hurricane Katrina struck Louisiana and September 26, 2005, the date petitioner

---

122 S.Ct. 145, 151 L.Ed.2d 97 (2001); *Harris v. Hutchinson*, 209 F.3d 325, 330-31 (4th Cir.2000) (holding that attorney's mistaken interpretation of § 2244(d) limitation provision did not justify equitable tolling); *Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir.1999) (holding that attorney's miscalculation of limitations period was not valid basis for equitable tolling); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir.1999) (holding that untimeliness resulting from attorney's use of ordinary mail did not justify equitable tolling).]

Following these cases, it seems evident that counsel's mistake does not warrant equitable tolling, particularly under the circumstances presented here, where counsel inexplicably waited for so long. A contrary holding would lead to perverse results, in that the procedural errors of trained attorneys would be dealt with less harshly than would be mistakes by pro se litigants. Accordingly, we join the other circuits that have considered this issue and hold that mere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified." *Cousin*, 310 F.Ed at 848-49.

filed his state application for post-conviction relief because during this time, prisoners from Jefferson and Orleans Parish were housed at Winn Corrections Center and this circumstance "prohibited access to the prison law library..." [rec. doc. 6, pp. 8-9]

Such an argument is unavailing. The chaos which occurred in the aftermath of Hurricane Katrina did not result in the untimely filing of either petitioner's application for post-conviction relief, or the instant petition for habeas corpus.

### b. Delay in Obtaining Transcripts

Petitioner claims that he is entitled to a tolling for the 2 month period between November 2006 (the date the District Court denied his application for post-conviction relief) and January 2007 when he obtained the November transcripts and discovered that his claims were denied. [rec. doc. 6, pp. 10-11] Of course, petitioner has already been afforded the benefits of statutory tolling pursuant to 28 U.S.C. §2244(d)(2) for the entire period between September 26, 2005 (the date petitioner filed his *pro se* Application for Post-Conviction Relief in the Fifth Judicial District Court [rec. doc. 1, ¶7(b); rec. doc. 6-7, Exhibit 8, pp. 16-39]) and January 11, 2008, the date the Louisiana Supreme Court denied writs thus ending petitioner's state post-conviction litigation. *State ex rel. Lingefelt v. State*, 2007–804 (La. 1/112008), 972 So.2d 1158. [See Report and Recommendation, rec. doc. 2 at p. 6 – "Thus, a period of 275 days elapsed un-tolled between the date petitioner's judgment of conviction became final ... and the date he filed his state post-conviction application. Petitioner was able to toll the limitations period during the time that this post-conviction application remained pending in the Louisiana courts."]

### c. Counsel's Assertions

Finally, petitioner claims that his retained post-conviction counsel, Mr. Clary "repeatedly

advised [petitioner] that he had one year from the Louisiana Supreme Court's denial of post-conviction to file his *habeas* petition in federal court." [rec. doc. 6, pp. 12-16] As has been shown above, "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling... " *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007).

In short, petitioner has failed to demonstrate that he was "actively misled ... about the cause of action..." Nor has he shown that he was "... prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). His habeas petition, filed some 400 days after his judgment of conviction became final under the AEDPA is time-barred and he is not entitled to the benefits of equitable tolling.

*3. Merits*

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides for prompt review and examination of *habeas* petitions by the court and further states, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." Citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), the Advisory Committee Notes following Rule 4 state, "...under § 2243 it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer."

Petitioner's petition for *habeas corpus* is patently and manifestly frivolous and may be dismissed on the merits in accordance with Rule 4.

Petitioner argues three grounds for relief: "(1) The trial court erred in not hearing testimony or affidavits from witnesses of the defendant whose names were ordered to be

produced by the District Court Judge to the attorney representing the defendant; (2) The trial court erred in both conducting and making a ruling at the Post-Conviction Relief proceedings, without the presence of the defendant. No waivers were executed by the defendant; and (3) The trial court erred in denying defendant's motion to reconsider a constitutionally excessive sentence." [rec. doc. 1-3, p. 3]

### a. Defects in State Post-Conviction Proceedings

Claims One and Two involve allegations of error committed in the context of petitioner's post-conviction litigation. As a matter of law, petitioner is not entitled to relief.   As noted by the Fifth Circuit Court of Appeals:

> '[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court.' *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir.), *cert. denied*, *Johnson v. Monroe*, 522 U.S. 1003, 118 S.Ct. 576, 139 L.Ed.2d 415 (1997); see *Nichols v. Scott,* 69 F.3d 1255, 1275 (5th Cir.1995) ('An attack on a state *habeas* proceeding does not entitle the petitioner to *habeas* relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.') (internal quotation marks omitted); *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir.1992) (same); *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir.1987) (same); *Vail v. Procunier*, 747 F.2d 277, 277 (5th Cir.1984) (denying petitioner a certificate of probable cause because '[i]nfirmities in state habeas corpus proceedings do not constitute grounds for federal habeas relief'). Other circuits have similarly decided that *habeas corpus* relief is not available to correct alleged errors in state *habeas* proceedings. See, e.g., *Jolly v. Gammon*, 28 F.3d 51, 54 (8th Cir.1994); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir.1989); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir.1988); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir.1987); *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir.1986).

*Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999).

### b. Excessive Sentence

Petitioner claims that the sentences totaling 27-years at hard labor sentence which were imposed following his convictions for manufacturing methamphetamine and conspiring to

manufacture methamphetamine were Constitutionally excessive.

Petitioner's excessive sentence claim must be analyzed under the Eighth Amendment to the Constitution. The Eighth Amendment protects against cruel and unusual punishments. In order for a *habeas* petitioner to establish cruel and unusual punishment, he must establish that the punishment meted out to him was grossly disproportionate to the crime he committed. *Ewing v. California*, 538 U.S. 11, 20-24, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003); *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). If the sentence imposed was within the state's statutory limits, however, the sentence is entitled to a presumption of constitutionality and will not be upset unless the sentence is so disproportionate to the offense as to be completely arbitrary and shocking. *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir.1975). Methamphetamine is a Schedule II drug under Louisiana law. See La. R.S. 40:964(Schedule II) (C)(2). The penalty for manufacturing methamphetamine is a sentence of not less than 10 nor more than 30 years at hard labor. La. R.S.40:967(B)(3); the sentence for conspiring to manufacture methamphetamine is not more than one-half of the longest term of imprisonment or 5 to 15 years. (La. R.S.4):967(B)(3) and R.S.14:26(C). Petitioner was sentenced well within statutory limits and therefore his sentence is entitled to a presumption of constitutionality.

To determine whether a sentence was disproportionate, the federal *habeas* court must utilize the test set out in *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir.1992). The reviewing court first weighs the gravity of the offense against the severity of the sentence. *Id.* at 316. If the sentence is "grossly disproportionate" in relation to the offense, then the sentence should be compared to "(1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions." *McGruder*, 954 F.2d at 316. If the sentence is not "grossly

disproportionate," however, the inquiry is finished. *United States v. Gonzales*, 121 F.3d 928,

942-43 (5th Cir.1997). The sentences imposed are not grossly disproportionate to the offenses of

conviction. As noted by the Second Circuit Court of Appeal which addressed this issue initially

on direct review,

> Prior to imposing sentence, the trial court reviewed a presentence investigation
> (PSI) report. The defendant was 51 years old at the time of sentencing. After
> reciting the evidence presented at trial, the court discussed the defendant's
> criminal history, which included convictions for reckless operation of a vehicle,
> speeding, resisting an officer, disturbing the peace, hit and run, simple burglary
> and DWI. Probation on the simple burglary was revoked when the defendant was
> convicted of possession of marijuana with intent to distribute. The court also
> reviewed his social history. He was the ninth of 13 children; his parents worked at
> various jobs, including farming. The defendant quit school in the seventh grade,
> but obtained a GED and a small engine certificate. He worked for a tree service
> and a gas station.
>
> The defendant had three children from a marriage which ended in divorce in 1974.
> He married again, had two more children, and divorced in 1986. He lived with a
> third woman from 1987 until 1999 and had two more children. All seven of his
> children were adults at the time of sentencing.
>
> Information from the Richland Parish Sheriff's Department indicated the
> defendant had been manufacturing methamphetamine for approximately 20 years.
> He involved his family in the drug business and even bragged about how he had
> taught them the business. He had been heard in jail telling fellow inmates that
> when he got out he would start cooking again because it was easy money.
>
> The court then reviewed a letter from the defendant and listened to him tell an
> elaborate story of cooking methamphetamine undercover at the request of the
> police, of his efforts to help people get off methamphetamine, and of the police's
> efforts to set him up. He denied having any prior dealings with crystal
> methamphetamine at any time in his life. He said the police were after him and
> that everything was a lie. He also disputed portions of his criminal record. The
> court noted that two of defendant's sons had pled guilty to drug charges in
> connection with this case.
>
> The court found a high probability that the defendant would commit another crime
> if granted probation. He was in need of lengthy correctional treatment in a
> custodial environment. A lesser sentence would deprecate the seriousness of the

offense. <u>The court believed manufacture and conspiracy to manufacture</u>
<u>methamphetamine were very serious offenses because the drug was ruining the</u>
<u>lives of people in the parish and within the judicial district. The court found the</u>
<u>defendant had been persistently involved in criminal activity. The defendant was a</u>
<u>leader and organizer of his family and other young people in conspiring to</u>
<u>manufacture and in manufacturing methamphetamine. The defendant had made</u>
<u>money from his ongoing drug activities which threatened serious harm in the</u>
<u>parish. The court felt the defendant contemplated or should have contemplated</u>
<u>that his criminal conduct would cause or threaten serious harm to those who</u>
<u>would be taking the drugs and learning how to manufacture them. There was no</u>
<u>excuse or justification for the defendant's criminal conduct. Imprisonment would</u>
<u>not entail excessive hardship on his dependents.</u>

*    *    *

<u>Here, the evidence demonstrated that the defendant had a history of involvement</u>
<u>in the drug trade, including a prior conviction for possession with intent. The</u>
<u>evidence showed that he had cooked methamphetamine many times, in fairly large</u>
<u>batches, and he intended to do so again upon his release from confinement. He</u>
<u>engaged in these activities for the economic benefit, without regard to the harm</u>
<u>caused to those he supplied with drugs. He involved several young persons in his</u>
<u>enterprise, including family members who now have convictions due to their</u>
<u>association with him. Although he possessed a relatively large quantity of</u>
<u>marijuana, he garnered a relatively light sentence for it. The sentences are lawful</u>
<u>and are affirmed.</u>

*State v. Lingefelt*, (La.App. 2 Cir. 1/28/04) at *4-7, 865 So.2d at 282-84.

Petitioner has not shown that his sentences are grossly disproportionate to the crimes of

conviction. He merely argues conclusory allegations concerning the excessiveness of the

sentences.

Further, petitioner has not, nor can he show that these sentences were disproportionate to

sentences imposed for similar violations in either nearby jurisdictions or elsewhere.[10]

---

[10] See *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/2006), 945 So. 2d 277 (consecutive sentences of
10 and 7.5 years for manufacturing methamphetamine and attempted creation of a clandestine drug laboratory); *State
v. Drane*, 36, 230 (La. App. 2 Cir. 9/18/2002), 828 So.2d 107 (40 years for manufacturing methamphetamine, the
minimum mandatory penalty prior to the Legislature's 2001 amendment of the penalty provision of the statute); see
also *Vilandre v. State of Oklahoma*, 113 P.3d 893, 2005 OK CR 9, (Okla.Crim.App., May 24, 2005) (20 years for
manufacture of methamphetamine not excessive); *State v. Adams*, 137 Idaho 275, 47 P.3d 778, (Idaho App., April

26

As the Supreme Court has noted, outside the context of capitol punishment, successful proportionality challenges are "exceedingly rare" and constitutional violations are sustained in only "extreme" or "extraordinary" cases. *Ewing*, 538 U.S. at 21; *Lockyer v. Andrade*, 538 U.S. 63, 73, 77, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

Petitioner was convicted of manufacturing and conspiring to manufacture methamphetamine; he was sentenced well within the statutory limits and, his sentences are therefore entitled to the presumption of constitutionality. Petitioner has not rebutted that presumption, nor has he established that these sentences were "grossly disproportionate." Since the sentences are not grossly disproportionate, further inquiry into the proportionality of his sentence is unnecessary. *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir.1997). His excessive sentence claim is clearly without merit.

## 4. Conclusion

The petition is time-barred by the provisions of 28 U.S.C. § 2244(d)(1)(A). Equitable tolling does not apply. Alternatively, petitioner's claims for relief are manifestly without merit and dismissal on the merits, pursuant to Rule 4 is recommended.

Accordingly,

**IT IS AGAIN RECOMMENDED** that this petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** because petitioner's claims are barred by the one-year limitations period codified at 28 U.S.C. §2244(d).

---

12, 2002) (8-20 years for manufacture of amphetamines for offender who was a first-time felon held not excessive); *State v. Slater*, 136 Idaho 293, 32 P.3d 685 (Idaho App., August 03, 2001) (concurrent sentences of 25 and 8 years for manufacture and delivery of methamphetamine held not excessive); and, *Latham v. State*, 20 S.W.3d 63 (Tex.App.-Texarkana, March 10, 2000) (35-year sentence for possession of 400 grams of methamphetamine by a person who was in fact manufacturing the drug, held, not excessive.)

In the alternative,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** on the merits pursuant to the provisions of Rule 4.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers at Monroe, Louisiana, December 4, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE